UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------- X
                       :

RENE OSWALD COBAR,       :

                       :

           Plaintiff,   :

                       :

        v.             :      12 Civ. 7415 (KPF)

                       :

DRUG ENFORCEMENT       :      OPINION AND ORDER
ADMINISTRATION ASSET    :
FORFEITURE SECTION (CCF),  :

                       :

           Defendant.  :

-------------------------------------------------- X

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #: _____
> DATE FILED: _March 31, 2014_

KATHERINE POLK FAILLA, District Judge:

      On April 6, 2004, nearly a decade ago, Plaintiff Rene Oswald Cobar was arrested in the Southern District of New York in connection with a money laundering investigation, in the course of which $209,775 in U.S. Currency was seized. Proceeding *pro se*, Plaintiff now seeks the return of the seized currency from the Asset Forfeiture Section of the Drug Enforcement Administration ("DEA"). He claims that the DEA improperly seized the currency, and that he did not receive adequate notice of the forfeiture proceedings, in violation of his due process rights. Because Plaintiff's action is time-barred, the Court grants the DEA's motion to dismiss Plaintiff's complaint.

# BACKGROUND[1]

## A.    Plaintiff's Arrest and Prosecution

On April 6, 2004, Plaintiff and an individual named Filadelfo Sanabria-Erazo were arrested in New York City in connection with a DEA investigation into money laundering in New York and Nevada.  (Compl. 2; Def. Br., Exh. B, ¶¶ 2-4).  When DEA agents arrested Plaintiff and Sanabria-Erazo, they seized $209,775 (the "Currency") from Plaintiff.  (*Id.*).  In a post-arrest statement, Plaintiff advised the agents that the Currency belonged to Sanabria-Erazo, and that Sanabria-Erazo had agreed to pay Plaintiff $1,000 to accompany Sanabria-Erazo to New York for a money-laundering transaction.  (Def. Br., Exh. B, ¶ 7).

On April 7, 2004, a criminal complaint was filed in the United States District Court for the District of Nevada, charging Plaintiff and Sanabria-Erazo with conspiracy to commit money laundering.  (Def. Br., Exh. A).  Arrest

---

[1]    The facts set forth herein are drawn from Plaintiff's complaint (the "Complaint") and the exhibits thereto; the exhibits attached to the Declaration of Vicki L. Rashid ("Rashid Decl."); the exhibits to Defendant's motion ("Def. Br., Exh.") and the Plaintiff's opposition ("Pl. Opp., Exh."); as well as matters of public record of which the court may permissibly take judicial notice under Federal Rule of Evidence 201, including public records such as indictments and criminal disposition data.  *See Kramer* v. *Time Warner Inc.*, 937 F.2d 767, 773-74 (2d Cir. 1991) (holding that the Court may consider matters of which judicial notice may be taken under Fed. R. Evid. 201); *see also Awelewa* v. *New York City*, No. 11 Civ. 778 (NRB), 2012 WL 601119, at *2 (S.D.N.Y. Feb. 23, 2012) (judicial notice may be taken of arrest reports, criminal complaints, indictments, and criminal disposition data (citing *Wims* v. *New York City Police Dep't*, No. 10 Civ. 6128 (PKC), 2011 WL 2946369, at *2 (S.D.N.Y. July 20, 2011)).  Where the Court takes judicial notice, it does so "in order to determine what statements [the public records] contained ... not for the truth of the matters asserted."  *Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (internal quotation marks and emphases omitted) (quoting *Kramer*, 937 F.2d at 774).

In this Opinion, Defendant's opening brief is referred to as "Def. Br."; Plaintiff's opposition brief is referred to as "Pl. Opp."; and Defendant's reply brief is referred to as "Reply Br."

warrants were issued in the District of Nevada, and Plaintiff was presented that same day in this District, pursuant to Federal Rule of Criminal Procedure 5(c)(3). *See United States* v. *Cobar*, No. 04 Mag. 708. (Def. Br., Exh. C). On April 27, 2004, Plaintiff was transferred to the District of Nevada to face the charges in the complaint.

On May 5, 2004, a grand jury in the District of Nevada returned an indictment (the "2004 Indictment") charging Plaintiff and others with conspiracy to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A)(ii), and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) and (h). (Def. Br., Exh. D). Plaintiff was arraigned in Nevada on May 24, 2004, at which time he entered a plea of not guilty on both counts. *See United States* v. *Cobar*, No. 04 Cr. 174 (D. Nev.). On January 24, 2005, on the Government's motion, the court dismissed the money laundering charge for lack of venue (Pl. Opp., Exh. F), and on January 26, 2006, also on the Government's motion, the court dismissed the 2004 Indictment without prejudice for lack of venue (*id.*, Exh. G).

On January 24, 2007, a grand jury in the District of Nevada indicted Plaintiff on various narcotics offenses (the "2007 Indictment"), including conspiracies to import and to distribute cocaine and heroin. (Pl. Opp., Exh. H). *United States* v. *Cobar*, No. 07 Cr. 014 (D. Nev.).[2] During Plaintiff's trial on the 2007 Indictment, the Currency was introduced as evidence against Plaintiff.

---

[2]     A comparison of the 2004 and 2007 Indictments suggests that the offenses charged in the 2007 instrument encompassed a portion of the conduct originally charged in the 2004 instrument.

(Compl. 4).  The jury found Plaintiff guilty of three counts of the 2007 Indictment.  Plaintiff was sentenced principally to a term of 235 months' imprisonment, and is currently serving that term.

## B.  The Administrative Forfeiture of the Currency

Sometime after the Currency was seized, the Government initiated administrative proceedings to forfeit it.  (*See* Rashid Decl., Exh. 18).  To that end, on May 18, 2004, pursuant to 19 U.S.C. § 1607(a) and 18 U.S.C. § 983(a), Defendant sent a written Notice of Seizure by certified mail, return receipt requested, to (i) Plaintiff, in care of addresses in Miami, Florida, and a correctional facility in Brooklyn, New York; and (ii) Plaintiff's attorney for the Rule 5(c)(3) proceedings in this District.  (*Id.*, Exh. 1-6).  The Notice of Seizure provided, in relevant part:

> The above-described property [i.e., $209,775 in U.S. Currency seized in New York, New York, from Plaintiff] was seized by Special Agents of the Drug Enforcement Administration ("DEA") for forfeiture pursuant to Title 21, United States Code (U.S.C.), Section 881, because the property was used or acquired as a result of a violation of the Controlled Substances Act…. You may petition the DEA for return of the property or your interest in the property…. You should review the following procedures very carefully.
>
> If you want to request the remission (pardon), or mitigation of the forfeiture, you must file a petition for remission or mitigation with the Forfeiture Counsel of the DEA within thirty (30 days) of your receipt of this notice.
>
> In addition to, or in lieu of petitioning for remission or mitigation, you may contest the forfeiture of the seized property in UNITED STATES DISTRICT COURT.  To do so, you must file a claim with the Forfeiture Counsel of the DEA by June 22, 2004.

(*Id.*, Exh. 1).  The notice sent to Plaintiff at the Miami address was returned to Defendant on June 14, 2004, without signature, and with a notation listing an

address in Las Vegas, Nevada.  (*Id.*, Exh. 2).  The notice sent to Plaintiff at the
Brooklyn address was also returned to Defendant on June 1, 2004, without
signature, and with a notation "Return to Sender, Refused."  (*Id.*, Exh. 6).  On
the other hand, a return receipt was returned to Defendant for the notice sent
to Plaintiff's attorney.  (*Id.*, Exh. 4).

Defendant also published the Notice of Seizure in the *Wall Street Journal.*
(Rashid Decl., Exh. 13).  *See* 19 U.S.C. § 1607(a) (requiring that notice for
seizures of property not exceeding $500,000 "be published for at least three
successive weeks in such manner as the Secretary of the Treasury may direct").
The notice in the *Wall Street Journal* was published once a week for three
successive Mondays on June 7, 14, and 21, 2004.  (*Id.*, Exh. 13).  The
published notice was substantively equivalent to the mailed notices, except
that it provided any claimant until July 21, 2004, to submit a claim.  (*Id.*).

On July 22, 2004, after confirming Plaintiff's residential address and
incarceration status, Defendant sent additional Notices of Seizure to Plaintiff by
certified mail, return receipt requested, at an address in Miami, Florida (with a
different zip code than the address to which the initial notice had been sent),
and at the North Las Vegas Detention Center.  (Rashid Decl., Exh. 14-17).
Each of these notices was identical to the prior notices, except that they
extended the time by which Plaintiff could file a claim to August 26, 2004.
(*Id.*).  The notice sent to the Miami address was returned to Defendant without
signature, and with a notation "Returned to Sender, Unclaimed."  (*Id.*, Exh. 15).
The notice to the North Las Vegas Detention Center, however, was accepted for

delivery, though the signatory on the return receipt was an individual other than Plaintiff.  (*Id.*, Exh. 17).

Defendant did not receive a claim from Plaintiff by August 26, 2004 (*see* Rashid Decl. ¶ 4(k)), a fact that Plaintiff does not dispute.  On September 8, 2004, the Currency was forfeited to the United States.  (*Id.*, Exh. 18).  The Declaration of Forfeiture stated:

> The [$209,775] has been seized by agents of the DRUG ENFORCEMENT ADMINISTRATION pursuant to 21 U.S.C. Section 881.  Notice of the seizure has been sent to all known parties who may have a legal or possessory interest in the property.  Also, in accordance with 19 U.S.C. Section 1607, notice of the seizure has been published and no claim has been filed for the property within 30 days from the date of last publication of the advertisement.  On this date, [Forfeiture Counsel has] examined this matter, and found there was sufficient information to support the forfeiture of this property.

(*Id.*).

## C.  Plaintiff's Post-Forfeiture Communications with Defendant

Seven years after the forfeiture, on September 6, 2011, Plaintiff wrote a letter to Defendant requesting information regarding the procedures by which he could obtain the Currency.  (Compl. 2, Exh. A).  In that letter, Plaintiff stated:

> The government filed a complain[t] in which stated that the money was with a proceed of illegal narcotics transactions, but actually the money was seized without drugs or anything that would attach to something unlawfully.

> [T]he complain[]t/case was dismissed in 2005, and after the dismissal of the complain[t], the office of the HQS sent me a letter stating that I can claim the money back.[3]

> For this reason, I am requesting this office to send me information regarding the procedures I need to take in order to have my money back.

(*Id.*).  On November 21, 2011, a representative of Defendant's Asset Forfeiture Section responded to Plaintiff's inquiry, advising Plaintiff that the Currency had been administratively forfeited in 2004.  (*Id.*).  Plaintiff was also informed that, because the Currency had been forfeited according to law, he could not seek return of the Currency, and that his time period to submit a "Claim or a Petition for Remission or Mitigation of Forfeiture ha[d] expired."  (*Id.*).

On December 14, 2011, Plaintiff responded to Defendant's November 21 letter by stating, in relevant part:

> Now, pursuant to 21 U.S.C.S. § 881 your agency was required to informed me with an adequate notice of the administrative forfeiture proceedings and of the date when said forfeiture commenced.  Furthermore, pursuant to 21 U.S.C.S. § 881, which is part of the comprehensive Drug Abuse prevention and control Act ... authorizes the civil forfeiture of funds that are the proceeds of drug transaction.  For property valued at US $500,000 or less, the "DEA" may follow an administrative forfeiture process governed by customs law.  19 U.S.C.S. § 881(d) an administrative forfeiture is commenced by the <u>publication</u> of notice.  In addition, the "DEA" must send notice to every party who has an interest in the property.

> 19 U.S.C. § 1607, if no claim or cost bond is filed, or if a petition to waive the bond is not filed or is denied and not appealed, then an administrative forfeiture occurs by default.

---

[3]  It is unclear when Plaintiff received this notice; he does not indicate when he did, nor does Defendant provide any clarifying information.  Confirmation of this fact, however, is unnecessary in order to resolve the pending motion.

7

> When the money was seized by the New York police and DEA agents, this seiz[ure] was without a warrant, and within the same year, a motion was filed to dismiss the charge (money laundering) and the District Court Judge dismissed the charge. Therefore, the money was not related to any unlawful activity.
>
> Therefore, and for the reasons set forth above, this Claimant respectfully requests to this Agency ("DEA") to provide with copies of the document[s] as the letter[s], notice, etc., of this Agency regarding the administrative forfeiture including the publication notice.

(Compl., Exh. B (emphasis in original)).[4]

## D.    The Instant Litigation

Plaintiff commenced this action by filing a complaint dated September 26, 2012, which was received by the Court on October 2, 2012. (Dkt. #2). On April 1, 2013, the Court issued an order directing Plaintiff to show cause why this action should not be dismissed as time-barred. (Dkt. #10). The Court explained that a motion under the Section 2 of the Civil Asset Forfeiture Reform Act ("CAFRA"), 18 U.S.C. § 983(e)(5), was "the exclusive remedy for seeking to set aside a declaration of forfeiture under a civil forfeiture statute." The Court continued:

> [CAFRA] provides that a motion to set aside a declaration of administrative forfeiture "may be filed not later than 5 years after the date of final publication of notice of seizure of the property. According to the complaint and its attachments, the "final publication of notice of seizure" of Plaintiff's property, which

---

[4]    Despite Plaintiff's allegation that Defendant did not respond to this request (Compl. 3), attached to Plaintiff's complaint is a letter from Defendant dated May 23, 2012, in which Defendant informed Plaintiff that "[i]n addition to the Wall Street Journal Publication, notice letters were also sent to [Plaintiff's] attorney, [Plaintiff's] jail address, and [Plaintiff's] residence." (*Id.*, Exh. B). In the May 23 letter, Defendant indicated that it would respond to Plaintiff's request for copies of the forfeiture notice documents in a separate letter. (*Id.*). Copies of those documents were not attached to Plaintiff's complaint. Plaintiff does, however, attach a July 25, 2012 letter from Plaintiff to Defendant, in which he informed Defendant that he had not yet received the requested documents. (*Id.*, Exh. C).

triggered the five-year limitations period, appeared in the Wall Street Journal in 2004. The Plaintiff filed this action on September 26, 2012, more than seven years after the 2004 publication that triggered the limitations period. Therefore, it appears that the complaint should be dismissed as time-barred.

(*Id.* (internal citations omitted)).

On May 28, 2013, Plaintiff responded, asserting, among other things, that he did not receive notice of the forfeiture proceedings; that "there was no administrative forfeiture publication"; and that the statute of limitations was thus tolled. (Dkt. #11). The Court found that Plaintiff demonstrated sufficient cause, and permitted the Complaint to go forward. (*See* Dkt. #13).

Defendant filed its motion to dismiss on December 16, 2013. (Dkt. #22). Plaintiff filed his opposition on January 22, 2014 (Dkt. #29), and the motion was fully submitted on February 10, 2014 (Dkt. #30), when Defendant filed its reply.

## DISCUSSION

Plaintiff's contentions regarding the Currency's forfeiture are twofold. As to the merits, Plaintiff alleges that the Government was not entitled to seize the Currency in the first place, because it never proved that the "money was drug related." (Compl. 5). Procedurally, Plaintiff alleges that he was never provided with notice of the forfeiture proceeding, thus violating his due process rights. (*Id.* at 3). Defendant moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that: (i) under the principle of sovereign immunity, the Court lacks subject matter jurisdiction to grant Plaintiff the relief requested; (ii) Plaintiff's claim is statutorily time-barred; and

(iii) Plaintiff fails to state a claim upon which relief can be granted.  (Def. Br. 1, 14).

## A.    Applicable Law

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *John Brady* v. *Int'l Broth. of Teamsters, Theatrical Drivers and Helpers Local 817*, 741 F.3d 387, 389 (2d Cir. 2014).  In reviewing a Rule 12(b)(1) motion to dismiss, "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison* v. *Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (internal quotation marks and citation omitted).  A plaintiff invoking federal jurisdiction "has the burden of proving by a preponderance of the evidence that it exists."  *Id.*  In determining whether an action should be dismissed for lack of subject matter jurisdiction, the district court may consider evidence outside the pleadings.  *Id.*

When considering a motion under Rule 12(b)(6), the Court should "draw all reasonable inferences in Plaintiff's favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Selevan* v. *N.Y. Thruway Auth.*, 548 F.3d 82, 88 (2d Cir. 2009)).  A plaintiff is entitled to relief if he

alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)). A court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Hennenman*, 517 F.3d 140, 149 (2d Cir. 2008) (quoting *Smith* v. *Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)). "[A] plaintiff's *reliance* on the terms and effects of a document in drafting the complaint is a necessary prerequisite to the court's consideration of the document on a dismissal motion; mere notice or possession is not enough." *Id.* (emphasis in original).

"A motion to dismiss on statute of limitations grounds generally is treated as a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), as opposed to under Rule 12(b)(1)." *Nghiem* v. *U.S. Dep't of Veterans Affairs*, 451 F. Supp. 2d 599, 602 (S.D.N.Y. 2006), *aff'd*, 323 F. App'x 16 (2d Cir. 2009) (summary order), *cert. denied*, 558 U.S. 1137 (2010); *accord Ghartey* v. *St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989). The reason Rule 12(b)(6) provides "the most appropriate legal basis" for such a motion is "because expiration of the statute of limitations presents an affirmative defense." *Ngheim*, 451 F. Supp. 2d at 602.

Where, as here, the plaintiff is proceeding *pro se*, the Court must construe the "pleadings broadly, and interpret them to raise the strongest arguments that they suggest." *Cruz* v. *Gomez,* 202 F.3d 593, 597 (2d Cir. 2000) (internal quotation marks omitted) (citing *Graham* v. *Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)); *accord McPherson* v. *Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos* v. *Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, the liberal pleading standard accorded to *pro se* litigants "is not without limits, and all normal rules of pleading are not absolutely suspended." *Stinson* v. *Sheriff's Dep't,* 499 F. Supp. 259, 262 (S.D.N.Y. 1980).

## B.    Analysis

### 1.    The Court Has Jurisdiction to Hear Plaintiff's Claim

Defendant's first argument is that Plaintiff's Complaint should be dismissed because this Court lacks subject matter jurisdiction based upon principles of sovereign immunity. (Def. Br. 8). In support of this argument,

Defendant relies on cases brought under Federal Rule of Criminal Procedure 41(g), another mechanism by which a claimant may seek return of seized property.  (Def. Br. 8 (citing Fed. R. Crim. P. 41(g) ("A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.")).  In Rule 41(g) cases, the Second Circuit has held that "[o]nce seized currency has been disbursed and is no longer available," as it is here, "a claim for its return is ... no longer at hand: such claims are jurisdictionally barred by the principle of sovereign immunity."  *Diaz* v. *United States*, 517 F.3d 608, 613 (2d Cir. 2008).

The Court agrees with the Government that if Plaintiff had brought a Rule 41(g) motion, his case would be subject to dismissal under principles of sovereign immunity.  *Diaz*, 517 F.3d at 613; *see also Adeleke* v. *United States*, 355 F.3d 144, 155 (2d Cir. 2004) ("[T]his case was properly dismissed because [] sovereign immunity deprived the district court of jurisdiction to pay [Plaintiff] money damages for property that could not be returned pursuant to Fed. R. Crim. P. 41(g).").  The Court, however, construes Plaintiff's claim as an action under CAFRA seeking to set aside a declaration of forfeiture.

First, and most importantly, Plaintiff explicitly relies on the forfeiture statutes in bringing his claim.  (*See* Compl. 6).  Second, Plaintiff acknowledged the applicability of CAFRA in opposing the pending motion.  (Pl. Opp. 2).  *Cf. Centeno* v. *United States*, No. 05 Civ. 8794 (RMB) (GWG), 2006 WL 2382529, at *3 (S.D.N.Y. Aug. 17, 2006) (construing plaintiff's claim as a motion to set aside civil forfeiture under CAFRA where, after the Government noted that Plaintiff's

13

motion should be construed as arising under CAFRA, the plaintiff requested that the Court treat it as such).  Although the Court recognizes that Plaintiff could have brought a Rule 41(g) motion, it does not construe Plaintiff's claim as such, particularly because the Court must interpret that claim to raise the strongest argument it suggests.  *Cruz*, 202 F.3d at 597.[5]  Thus, because the Court has found that Plaintiff has not brought a claim under Rule 41(g), his Complaint is not barred by sovereign immunity, and this Court has subject matter jurisdiction to adjudicate this dispute.

### 2.    Plaintiff's Claim Is Time-Barred Under CAFRA

### a.    Administrative Forfeitures Under CAFRA

As relevant here, Section 983(a)(2) provides:

> Any person claiming property seized in a nonjudicial civil forfeiture proceeding under a civil forfeiture statute may file a claim with the appropriate official after the seizure.

> A claim under [this] subparagraph (A) may be filed not later than the deadline set forth in a personal notice letter (which deadline may be not earlier than 35 days after the date the letter is mailed), except that if that letter is not received, then a claim may be filed not later than 30 days after the date of final publication of notice of seizure.

18 U.S.C. § 983(a)(2).  Failure to timely file a claim results in the property being administratively forfeited.  19 U.S.C. § 1609.  On the other hand, "a proper and timely filing stops the administrative process, and the matter is transferred to

---

[5]    Had Plaintiff's request been construed as a Rule 41(g) motion, the Government is correct that sovereign immunity would have foreclosed a claim against the Government for money damages relating to the disposition of the Currency.  *See Adeleke*, 355 F.3d at 151 ("[A]lthough we continue to adhere to the *Mora* and its progeny insofar as those cases recognize federal equitable jurisdiction to order the return of property pursuant to Rule 41(g) even after the conclusion of criminal proceedings, we here clarify that such equitable jurisdiction does not permit courts to order the United States to pay money damages when, for whatever reason, property is not available for Rule 41(g) return.").

the United States Attorney who then must institute judicial forfeiture proceedings in the United States District Court." *Aquasviva* v. *U.S. Drug Enforcement Admin.*, No. 02 Civ. 3076 (TPG), 2004 WL 1900341, at *3 (S.D.N.Y. Aug. 24, 2004); 21 C.F.R. §§ 1316.76(b), 1316.78.

CAFRA also provides a mechanism for an interested party to challenge the seizure of property after a forfeiture proceeding has been completed. Pursuant to Section 983(e)(1), "[a]ny person entitled to written notice in any nonjudicial civil forfeiture proceeding under a civil forfeiture statute who does not receive such notice may file a motion to set aside a declaration of forfeiture with respect to that person's interest in the property"; the claimant must establish that: (i) "the Government knew, or reasonably should have known of the moving party's interest and failed to take reasonable steps to provide such party with notice," and (ii) "the moving party did not know or have reason to know of the seizure within sufficient time to file a timely claim." 18 U.S.C. § 983(e)(1). Congress has, however, expressly limited a claimant's ability to set aside a declaration of forfeiture once the forfeiture proceeding has been completed by requiring that any motion to set aside the forfeiture "be filed not later than 5 years after the date of final publication of notice of seizure of the property." 18 U.S.C. § 983(e)(3).

### b.    Plaintiff's Claim Is Barred by the Statute of Limitations

Defendant argues that Plaintiff's claim is barred by the five-year statute of limitations governing CAFRA actions because Plaintiff filed his claim on September 26, 2012, more than eight years after the final publication of the

initial Notice of Seizure, and even after the extension of time Defendant provided to Plaintiff to bring a claim in its July 22, 2004 Notice of Seizure. (Def. Br. 14).  Defendant is correct.

The final publication of the Notice of Seizure in the *Wall Street Journal* occurred on June 21, 2004.  (Rashid Decl., Exh. 13).  CAFRA therefore required Plaintiff to file his claim to set aside the forfeiture at issue here by June 21, 2009.  Even if the Court were to toll the date of final publication to August 26, 2004 — the date by which Plaintiff could file a claim in Defendant's July 22, 2004 written notice of seizure (Rashid Decl., Exh. 16) — Plaintiff was still required to file his claim by August 26, 2009.  Plaintiff's Complaint was dated September 26, 2012, and received by this Court on October 2, 2012, more than three years after the statute of limitations had run.  (Dkt. #2). Plaintiff's Complaint is therefore untimely.[6]  18 U.S.C. § 983(e); *Hayes* v. *United States*, No. 08 Civ. 6525 (RMB)(HBP), 2009 WL 1867965, at *2 (S.D.N.Y. June 29, 2009) ("Plaintiff's claims are time-barred under CAFRA's five-year statute of limitations because the final notice of seizure was published in the *Wall Street Journal* on September 4, 2011 and this action was not commenced before September 4, 2006." (internal quotation marks omitted)); *see also Can* v. *U.S. Drug Enforcement Agency*, 764 F. Supp. 2d 519, 521 (W.D.N.Y. 2011) ("[The plaintiff's] failure to file this complaint within the five years statute of limitations requires that the complaint be dismissed.").

---

[6]     So as to avoid any doubt, even if the Court were to construe Plaintiff's September 6, 2011 letter to Defendant requesting information regarding the procedures by which he could obtain the Currency (Compl., Exh. A), as a claim for the Currency, Plaintiff's claim would still be untimely filed by over two years.

16

Although Plaintiff does not specifically raise such an argument, the Court will consider whether the statute of limitations should be equitably tolled. "Statutes of limitations are generally subject to equitable tolling where necessary to prevent unfairness to a plaintiff who is not at fault for [his] lateness in filing." *Gonzales* v. *Hasty*, 651 F.3d 318, 322 (2d Cir. 2011). "[A] litigant seeking equitable tolling must establish two elements: [i] that he has been pursuing his rights diligently, and [ii] that some extraordinary circumstance stood in his way and prevented timely filing." *Bolarinwa* v. *Williams*, 593 F.3d 226, 231 (2d Cir. 2010) (internal quotation marks omitted). In this setting, "[t]he term 'extraordinary' refers not to the uniqueness of a party's circumstances, but rather to the severity of the obstacle impeding compliance with a limitations period." *Harper* v. *Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).

Construing the pleadings in the light most favorable to Plaintiff, as it must, the Court finds that there is nothing in the record to suggest that the statute of limitations should be equitably tolled.  Plaintiff was aware of the seizure at the time of his arrest, yet made no effort to retrieve the Currency until nearly eight years later, on September 6, 2011, when he wrote a letter to Defendant requesting "information regarding the procedures [Plaintiff] need[ed] to take in order to have [his] money back." (Compl., Exh. A).  Even then, Plaintiff made only two attempts to pursue his claim by sending Defendant two more letters, dated December 14, 2011, and July 25, 2012.  (*Id.*, Exh. B, C).

"To merit equitable relief, a plaintiff must have acted with reasonable diligence during the time period [he] seeks to have tolled." *Peneccasio* v. *Unisource Worldwide, Inc.*, 532 F.3d 101, 112 (2d Cir. 2008). Plaintiff's efforts do not establish the diligence required for equitable tolling, particularly in light of the extensive length of time since the Currency was forfeited. *See United States.* v. *Capote*, 159 F. App'x 108, 113 (11th Cir. 2005) (per curiam) (holding that plaintiff did not establish diligence where he waited more than 12 years to challenge the forfeiture).

Nor can the Court find any extraordinary circumstance that prevented Plaintiff from timely filing his complaint. In the Court's April 1, 2013 Order to Show Cause, it informed Plaintiff that he should "allege any facts showing that 'he has been pursuing his rights diligently' and that 'some extraordinary circumstance stood in his way.'" (Dkt. #10 (quoting *Torres* v. *Barnhart*, 417 F.3d 276, 279 (2d Cir. 2005))). Aware of the standard that he needed to meet, the only circumstance to which Plaintiff points is his alleged failure to receive notice of the forfeiture proceedings. (*See* Dkt. #11). Even accepting Plaintiff's allegations as true, this is not the type of "extraordinary circumstance" that warrants equitable tolling. *See Hayes* v. *United States*, No. 08 Civ. 6525 (RMB)(HBP), 2009 WL 1856789, at *8 (S.D.N.Y. Feb. 18, 2009) (rejecting plaintiff's argument that defendant's failure to inform plaintiff of CAFRA was an extraordinary circumstance; concluding that "[t]he 'failure' of the United States to do something it had no obligation to do cannot constitute an extraordinary circumstance sufficient to justify an equitable toll") (Report and

Recommendation); *see also Capote*, 159 F. App'x at 113 (holding that plaintiff's claim would not be equitably tolled where plaintiff argued that his failure to timely move was due to the Government's negligence in failing to provide plaintiff with notice of forfeiture, where plaintiff was aware that forfeited property had been seized). Plaintiff knew the Currency had been seized, yet, for whatever reason, elected not to pursue a claim until nearly eight years later.

Plaintiff admits contemporaneous knowledge of the seizure. (Compl. 2). At most, therefore, Plaintiff's allegations can be construed as arguments that although he knew that the Currency was seized, he did not know that it would be forfeited (i.e., that he would lose the right to obtain it) or that there were time limits to making a claim for the Currency. Ignorance of the law, however, will not support equitable tolling. *See Edwards* v. *I.N.S.*, 59 F.3d 5, 8 (2d Cir. 1995) ("[W]hile a *pro se* litigant's pleadings must be construed liberally ... *pro se* litigants generally are required to inform themselves regarding procedural rules and to comply with them." (internal citations omitted)); *Wong* v. *Healthfirst, Inc.*, No. 04 Civ. 10061 (DAB), 2006 WL 2457944, at *2 (S.D.N.Y. Aug. 23, 2006) ("Mere ignorance of the law does not warrant equitable tolling of a statute of limitations."); *Ayala* v. *Fischer*, No. 04 Civ. 3404 (LAK), 2004 WL 2435523, at *1 (S.D.N.Y. Nov. 2, 2004) ("Ignorance of the law and an inability to read or write do not constitute extraordinary circumstances that would justify equitable tolling."); *Huang* v. *United States*, No. 03 Civ. 3755 (RPP), 2003 WL 22272584, at *3 (S.D.N.Y. Oct. 2, 2003) ("The district courts in the Southern District have unanimously found that ... [the] lack of familiarity with

the legal system [is] not [a] 'rare and exceptional' circumstance, and thus [is] not grounds for equitable tolling."). For all of these reasons, any claim for equitable tolling fails.[7]

Plaintiff's response to the instant motion focuses primarily on his allegations that (i) Defendant's seizure of the Currency was improper in the first instance and (ii) Defendant failed to comply with the forfeiture statutes, including by not providing him with adequate notice of the forfeiture proceeding, thereby violating Plaintiff's due process rights guaranteed under the Constitution. (Pl. Opp. 6). It is clear, however, that the Court may not review the merits of Plaintiff's challenges to the forfeiture of the Currency. *See Bermudez* v. *City of New York Police Dep't*, No. 07 Civ. 9537 (HB), 2008 WL 3397919, at *3 (S.D.N.Y. Aug. 11, 2008) ("The exclusive remedy for a claimant seeking return of forfeited property based on lack of notice is § 983(e) of the Civil Forfeiture Reform Act of 2000.... This Court, therefore, does not have jurisdiction to review the merits of the forfeiture and can only review the adequacy of the notice given to the claimant of the procedure for filing a

---

[7]     Although the Court construes Plaintiff's claim as arising under CAFRA, because Plaintiff is proceeding *pro se*, the Court has considered whether Plaintiff could state a claim under the Federal Tort Claims Act ("FTCA"), an argument Defendant identifies. (Def. Br. 11). The Court concludes that Plaintiff cannot. "The FTCA waives sovereign immunity, *inter alia*, for 'claims against the United States, for money damages ... caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" *Diaz*, 517 F.3d at 613 (quoting 28 U.S.C. § 1346). Because of certain limitations under the FTCA, in order to establish a claim under this statute, a claimant must satisfy, among other conditions, that "the interest of the claimant was not forfeited." *Id*; 28 U.S.C. § 2680(c)(2). Because Plaintiff's interest has been forfeited, he cannot satisfy one of the required conditions to proceeding under the FTCA, and as a result, this Court would not have jurisdiction to hear a FCTA claim brought by Plaintiff. *Diaz*, 517 F.3d at 614 (holding that Plaintiff could not bring a claim under the FTCA where the plaintiff could not establish one of the conditions required for a waiver of sovereign immunity).

claim."); *see also Hayes*, 2009 WL 1867965, at *3 ("Because the Court adopts Judge Pitman's recommendation that Plaintiff's claims be dismissed as untimely,... the Court need not address whether the Plaintiff's claims also fail on their merits."); *Can*, 764 F. Supp. 2d at 521 ("[The plaintiff's] failure to bring this action within the statute of limitations provides a basis for dismissal of the complaint upon that ground alone."); *see generally Young* v. *Gen. Motors Inv. Mgmt. Corp.*, 550 F. Supp. 2d 416, 420 (S.D.N.Y. 2008) ("Because the Court finds that a sufficient basis exists for dismissal of Plaintiffs' complaint on statute of limitations grounds, it need not address the merits of their claims.").

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is granted, and Plaintiff's Complaint is dismissed.

The Clerk of Court is directed to terminate Docket Entry No. 22, and close the case.

SO ORDERED.

Dated: March 31, 2014
     New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this was mailed by Chambers to:*
Rene Oswald Cobar
52175-054
Federal Correctional Institution
P.O. Box 5000
Oakdale, LA 71463